# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 21, 2012

## STATE OF TENNESSEE v. CHELSY MARIE SMITH

### Direct Appeal from the Circuit Court for Montgomery County
### Nos. 40801238, 40801322    John H. Gasaway, III, Judge

---

### No. M2011-00427-CCA-R3-CD - Filed April 23, 2012

---

The Defendant, Chelsy Marie Smith, pled guilty to theft of property over $1,000, a Class D felony, and aggravated robbery, a Class B felony. The trial court sentenced the Defendant, as a standard offender, to an effective sentence of one year in the Department of Correction followed by seven years on community corrections. After the Defendant's release, a violation warrant was issued, and, after a hearing, the trial court revoked the Defendant's community corrections sentence, finding that she had violated the terms of her sentence and ordered her to serve the remainder of her eight-year sentence in confinement. On appeal, the Defendant contends the trial court abused its discretion by revoking her community corrections sentence and ordering her to serve the balance of her sentence in prison. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the appellant, Chelsy Marie Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

At the disposition hearing on January 11, 2011, the trial court recited the background and procedural history of the Defendant's cases. The Defendant entered guilty pleas on August 13, 2009, for two separate cases: one for theft over $1,000 and another for aggravated robbery. The Defendant received concurrent terms of two years for the theft conviction and eight years for the aggravated robbery conviction, to be served in community corrections after one year in the Department of Correction. At the time of her guilty pleas, the Defendant had amassed over a year of confinement credit, enabling her to immediately begin her sentence in community corrections. On December 14, 2009, a violation warrant was issued for the following reasons: the Defendant's failure to remain drug free, testing positive for cocaine on September 8, 2009, September 21, 2009, and December 2, 2009; her failure to verify attempts to gain employment for four months; and her failure to conduct community service work while unemployed. The Defendant admitted she violated the terms of her community corrections sentence and waived a hearing on the violations. The trial court scheduled a disposition hearing for August 30, 2010, but the Defendant failed to appear and a capias was issued for her arrest. An amended violation warrant was issued, alleging the following additional violations: the Defendant's failure to report for fifty-six days; her failure to provide drug screens as requested on June 22, 2010, June 24, 2010, June 25, 2010, and July 13, 2010; a positive drug screen on June 16, 2010; and her failure to comply with the imposed curfew, missing curfew checks on March 10, 2010, and June 25, 2010.

Further, the trial court signed an Absconder Warrant on September 8, 2010, ordering that the Defendant be held without bond pending a court appearance. The warrant was served on October 28, 2010.

At the disposition hearing, the Defendant waived a hearing on the amended warrant, admitting the violations alleged therein. The Defendant requested that she be reinstated in community corrections, after being held in jail for seventy-eight days pending the hearing on the violation and amended violation warrants. The Defendant testified at the hearing that she had a problem with crack cocaine and had completed a twenty-eight day inpatient program for her addiction. She testified that, when she got out of the inpatient program, she attended a drug and alcohol rehabilitation program at Centerstone; however, she did not complete the program because her insurance lapsed. During her most recent incarceration, she contacted another rehabilitation facility, The Hope Center. The center refused to admit her to the program because of "all [the] medical conditions" she had experienced during her pregnancy. She stated that, at the time of the disposition hearing, she was three months and one week pregnant. Her due date was July 14, 2011. She testified that, if the trial court would reinstate her community corrections sentence, she would behave differently because this time there was "a child involved." She stated that she wanted to attend rehabilitation to address her problems,

and she would live with her fiancé who was enrolled in a care program that would "put [them] up in a hotel for two months" until they could get properly situated. She described the care program as a program that rehabilitates inmates by assisting with job searches, mental health services, transportation, and schooling. She testified that her only source of income, other than food stamps, was her fiancé.

The Defendant also testified that, until the filing of the warrants against her, she attended the Daymar Institute for dental assistance training. She also applied for disability while she was on community corrections. She testified that, if reinstated, she would comply with any and all terms and conditions of her community corrections sentence. She also requested the opportunity to attend rehabilitation programs.

After the Defendant's testimony, the trial court addressed the Defendant's violations, stating the following:

> That seems to tell me that the time that you were in jail back then had absolutely no [e]ffect on your intentions to continue to use cocaine if given the chance. . . . [Y]ou were cocaine free for over a year, after you walked out of this courtroom you went strai[gh]t back to using it within days, and continued to test positive. And basically you didn't do one thing right; you didn't do public service work, you didn't prove you were seeking employment. I mean, you just didn't do [it]; you blew it off.

After taking the matter under advisement, the trial court denied the Defendant's request, revoked the community corrections sentence, and ordered the Defendant to serve the remainder of her effective eight-year sentence in confinement. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant contends that the trial court erred when it revoked her community corrections sentence and ordered her to serve the remainder of her sentence in the Department of Correction. The State responds that the trial court properly revoked the Defendant's community corrections sentence. We agree with the State.

A trial court may revoke a defendant's community corrections sentence based on the defendant's non-compliance with the conditions of the community-based program. T.C.A. § 40-36-106(e)(3)-(4) (2010). The trial court must hold a probation revocation proceeding, during which "the trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before

the trial judge." T.C.A. § 40-35-311(d) (2010); *see State v. Hill*, 987 S.W.2d 867, 870-71 (Tenn. Crim. App. 1998) (If the defendant already began serving his sentence, the trial judge could only revoke a community corrections sentence with a proper revocation hearing and proper notice.) During the proceeding, the trial court must find proof of a community corrections violation by a preponderance of the evidence, and either

> (A) Cause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with § 40-35-310; or

> (B) Resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense.

T.C.A. § 40-35-311(e) (2010). Because Tennessee law permits the trial court to revoke probation only upon finding, by preponderance of the evidence, that the defendant has violated the terms of his or her probation, this Court will not disturb the trial court's determination absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011), *perm. app. denied* (Tenn. Oct. 18, 2011); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007); *see also State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980) (adopting the probations violation standard for a community corrections program violation due to the sentences' similar nature). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). We note that "'[o]nly one basis for revocation is necessary,'" and a defendant's admission to a violation of the conditions of release to the community corrections program is sufficient evidence for such a revocation. *State v. Joe Allen Brown*, No. W2007-00693-CCA-R3-CD, 2007 WL 4462990, at *4 (Tenn. Crim. App., at Jackson, Dec. 20, 2007), *no Tenn. R. App. P. 11 application filed* (quoting *State v. Alonzo Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn. Crim. App., at Knoxville, Oct. 5, 2001), *no Tenn. R. App. P. 11 application filed*); *see also State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (holding that a defendant's concession of an act constituting violation of probation constitutes substantial evidence of violation, and the trial court's revocation based thereon is not abuse of discretion).

If the trial court revokes the defendant's community corrections sentence, then, as mentioned above, it may "resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence

-4-

provided for the offense committed, less any time actually served in the community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4) (2010). Our supreme court has previously stated that "the sentencing of a defendant to a community based alternative to incarceration is not final, but is designed to provide a flexible alternative that can be of benefit both to the defendant and to society." *State v. Griffith*, 787 S.W.2d 340, 342 (Tenn. 1990). Moreover, a "defendant sentenced under the [Community Corrections Act] has no legitimate expectation of finality in the severity of the sentence, but is placed on notice by the Act itself that upon revocation of the sentence due to the conduct of the defendant, a greater sentence may be imposed." *Id*. If the trial court chooses to resentence a defendant to a more severe sentence, however, it may only do so after conducting a new sentencing hearing in accordance with the Sentencing Act of 1989. *State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). The trial court may not arbitrarily increase the length of the sentence and must state on the record the reasons for the new sentence. *State v. Ervin*, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996).

In the present case, the trial court made the following findings when it revoked the Defendant's community corrections sentence:

> [I]f the Court put her back on a release status, given her history[,] the Court believes that it is . . . almost certain that she would continue to abuse controlled substances, her drug of choice being cocaine, and the Court was gravely concerned about the [e]ffect that that would have on her child.

> But[,] I cannot make a decision about what to do with you . . . based upon what may or may not happen with regard to [the] child. I've got to make a decision with regard to what the ends of justice require. Given the history of your conduct and your failure to comply with the terms and conditions of your community correction sentence, especially after you spent a year in jail and then after getting out of jail, that one year period did not seem to have any [e]ffect on  - -  on you in terms of motivating you to live your life in compliance with the terms and conditions of your sentence.

> [I]f you were not pregnant then the Court believes that the decision of the Court would be swift and certain, and that would be for you to serve out the balance of your sentence in confinement. The hesitation that I have comes with the fact that you are pregnant. But my concern about the child does not override the duty that this Court feels it is compelled to do, and that is to - - because of your history and the likelihood that you cannot comply with the terms and conditions on a release status, to order you to finish out this sentence in confinement at the Department of Correction.

In this case, the record supports the trial court's finding that the Defendant violated the terms of her community corrections sentence. The Defendant failed to abide by the terms and conditions of her community corrections sentence. The Defendant admitted that she tested positive for cocaine on three occasions while serving her alternative sentence: September 9, 2009, September 21, 2009, and December 2, 2009. She also admitted that she failed to verify and report attempts to secure employment for a four-month period. Further, at her second violation of community corrections disposition hearing, the Defendant admitted to the contents of the amended violation warrant, which included the following: her failure to report, her failure to provide drug screenings, her positive drug test for amphetamines, and her missed curfew checks. Therefore, the evidence supports the trial court's finding that the Defendant could not comply with the terms and conditions of her release. As such, we conclude that the trial court's revocation of the Defendant's community corrections sentence was not an abuse of discretion.

In her argument, the Defendant relies on Tennessee Code Annotated section 40-35-103, arguing that the sentence imposed by the trial court was not the least severe measure necessary to achieve the purposes for which the sentence was imposed. However, the Defendant's reliance on this statute is misplaced. Only if the trial court had imposed a sentence greater than that originally imposed, up to the maximum sentence provided for the offense committed, would a new sentencing hearing be required. T.C.A. § 40-35-209(a) (2010). In other words, when the trial court chooses to resentence a defendant to a more severe sentence, it may only do so after conducting a new sentencing hearing in accordance with the Sentencing Act of 1989. *State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). The trial court may not arbitrarily increase the length of the sentence and must state on the record the reasons for the new sentence. *State v. Ervin*, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996). The trial court in this case did not impose a more severe sentence; rather, it required the Defendant to serve the remaining balance of her original sentence in confinement.

We find that the trial court appropriately ordered the Defendant to serve her remaining sentence in confinement. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

Based on the foregoing reasoning and authorities, we conclude the trial court properly revoked the Defendant's community corrections sentence and ordered the remainder of the sentence to be served in confinement. As such, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE